MATT O'MALLEY (SBN 272802)
San Diego Coastkeeper
2825 Dewey Rd # 200
San Diego, CA 92106
Ph: 619-758-7743
Email: matt@sdcoastkeeper.org

COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
LIVIA B. BEAUDIN (SBN 259434)
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fx: (760) 942-8515
Email: marco@coastlawgroup.com

Attorneys for Plaintiffs
SAN DIEGO COASTKEEPER and COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a non-profit corporation; COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a non-profit corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUPERIOR READY MIX CONCRETE, L.P. a California limited partnership,<br><br>    Defendant. | Civil Case No.: **'19 CV 0439 DMS KSC**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

Coastal Environmental Rights Foundation, ("CERF") and San Diego Coastkeeper (collectively referred to herein as "Plaintiffs"), by and through their counsel, hereby allege:

## I.    JURISDICTION AND VENUE

1.    This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*. (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.    On April 25, 2018, Plaintiffs issued a 60-day notice letter ("Notice Letter") to Superior Ready Mix Concrete, L.P., ("Superior Ready Mix" or "Defendant") regarding its violations of the Clean Water Act, and of Plaintiffs' intention to file suit against Defendant. The Notice Letter was sent to the registered agent for Superior Ready Mix, as required by 40 C.F.R. § 135.2(a)(1), the Facility, as well as the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, San Diego Region ("Regional Board") as required by CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of the Notice Letter is attached hereto as Exhibit A and incorporated herein.

3.    More than sixty days has passed since the Notice Letter was served on Defendant and the State and Federal agencies. Plaintiffs are informed and believe, and thereon allege, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. (33 U.S.C. § 1365(b)(1)(B)). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

4.    Venue is proper in the Southern District of California pursuant to Section

Complaint for Declaratory and Injunctive Relief and Civil Penalties

505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

## II.   INTRODUCTION

5.      This complaint seeks relief for the Defendant's unlawful discharge of pollutants into waters of the United States from its operations at 1508 W. Mission Road, Escondido, California, 92029 ("Escondido Facility" or "Facility"). Specifically, Defendant discharges storm water runoff from the Facility into storm drains, Escondido Creek, San Elijo Lagoon, and ultimately the Pacific Ocean (collectively referred to as the "Receiving Waters"). This complaint also seeks relief for Defendant's violations of the filing, monitoring, reporting, discharge and management practice requirements, and other procedural and substantive requirements of California's General Permit for Discharges Associated with Industrial Activities (*National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ and Order No. 2014-0057-DWQ)* ("Industrial Permit"). Defendant's violations of the Clean Water Act and the Industrial Permit are ongoing and continuous.

6.      With every rainfall event, hundreds of millions of gallons of polluted rainwater, originating from industrial operations such as the Escondido Facility, flow into Escondido storm drain systems and Receiving Waters. This discharge of pollutants in storm water from industrial activities such as the Escondido Facility contributes to the impairment of downstream waters and compromises or destroys their beneficial uses.

## III.   PARTIES

### A.   San Diego Coastkeeper and Coastal Environmental Rights Foundation

7.      Plaintiff San Diego Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California.

8.      San Diego Coastkeeper is committed to protecting and restoring the San Diego region's water quality and supply. A member of the international Waterkeeper Alliance, San Diego Coastkeeper's main purpose is to preserve, enhance, and protect the

San Diego's marine sanctuaries, coastal estuaries, wetlands and bays from illegal dumping, hazardous spills, toxic discharges and habitat degradation.

9.      San Diego Coastkeeper's office is located at 2825 Dewey Road, Suite 200, San Diego, California, 92106.

10.     Plaintiff CERF is a non-profit public benefit corporation organized under the laws of the State of California.

11.     CERF's office is located at 1140 South Coast Highway 101, Encinitas California, 92024.

12.     CERF was founded by surfers in North San Diego County and active throughout California's coastal communities. CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents. One of CERF's primary areas of advocacy is water quality protection and enhancement.

13.     Plaintiffs have thousands of members who live and/or recreate in and around the Receiving Waters.

14.     Plaintiffs' members use and enjoy the Receiving Waters to fish, sail, boat, kayak, paddle board, surf, swim, hike, view wildlife, and engage in scientific study including monitoring activities, among other activities. Defendant discharges pollutants from the Facility to the Receiving Waters used by Plaintiffs' members. Thus, Defendant's discharge of pollutants impairs Plaintiffs' members' uses and enjoyment of the Receiving Waters.

15.     The interests of Plaintiffs' members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the Industrial Permit.  The relief sought herein will redress the harms to Plaintiffs caused by Defendant's activities. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs' members, for which harm they have no plain, speedy or adequate remedy at law.

/./.

### B.    The Escondido Facility Owners and/or Operators

16.    Plaintiffs are informed and believe that Superior Ready Mix Concrete, L.P. is a limited partnership organized under the laws of the State of California, and is located in Escondido, California.

17.    Plaintiffs are informed and believe that Superior Ready Mix. has owned and operated the Escondido Facility located at 1508 W. Mission Road, Escondido, California, 92029 since at least 1992.

## IV.    STATUTORY BACKGROUND

### A.    The Clean Water Act

18.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19.    Section 402(p) of the CWA establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. (33 U.S.C. § 1342(p)). States with approved NPDES permit programs are authorized by Section 402(b) to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. (33 U.S.C. § 1342).

20.    Section 402(b) of the CWA allows each state to administer its own EPA-approved permit for storm water discharges. (33 U.S.C. § 1342(b)). In California, the State Board is charged with regulating pollutants to protect California's water resources.

21.    Section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology-based effluent limitations by utilizing the Best Available Technology Economically Achievable (BAT) for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology (BCT) for conventional pollutants.  (See 33 U.S.C. §

Complaint for Declaratory and Injunctive Relief and Civil Penalties

1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii)).

22.    The Industrial Permit is a statewide general NPDES permit issued by the State Board pursuant to Section 402 of the CWA that regulates the discharge of pollutants from industrial sites. (33 U.S.C. § 1342).

23.    Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation… or an order issued by the Administrator or a State with respect to such a standard or limitation." (33 U.S.C. § 1365(a)(1)).

24.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

25.    Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring after January 27, 2009 and $51,750 for violations occurring after November 2, 2015. (33 U.S.C. § 1319(d); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §19.4). 40 C.F.R. §19.4).

26.    Section 505(d) of the Clean Water Act permits prevailing parties to recover costs, including attorneys' and experts' fees. (33 U.S.C. § 1365(d)).

**B.    California's Industrial Permit**

27.    The Industrial Permit, NPDES General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ and Order No. 2014-0057-DWQ, is an NPDES permit adopted pursuant to Section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R § 123.25.  In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Industrial Permit and comply with its terms or obtain and comply with an individual NPDES permit. The Industrial Permit as amended pursuant to Order No. 2014-0057-DWQ became effective July 1, 2015 ("New Industrial Permit").

28.    Failure to comply with the Industrial Permit or New Industrial Permit constitutes a Clean Water Act violation. (Industrial Permit, § C.1; New Industrial Permit

§XXI.A.).

29.     Discharge Prohibitions A(1) of the Industrial Permit and III.B. of the New Industrial Permit prohibit the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by an NPDES permit, to the waters of the United States. Discharge Prohibition A(2) of the Industrial Permit and III.C. of the New Industrial Permit prohibit storm water discharges and authorized non-storm water discharges which cause or threaten to cause pollution, contamination, or nuisance.

30.     Effluent limitations B(3) of the Industrial Permit and Sections I.D and V.A. of the New Industrial Permit require facility operators to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.

31.     Effluent limitations B(1) of the Industrial Permit and Sections I.K and V.B. of the New Industrial Permit require facility operators of facilities in specific industrial categories to comply with Effluent Limitations Guidelines at 40 C.F.R. Chapter 1 Subchapter N.

32.     Industrial Permit Receiving Water Limitation C(1) and New Industrial Permit Receiving Water Limitation VI.B. prohibit storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impacts human health or the environment.

33.     Industrial Permit Receiving Water Limitation C(2) and New Industrial Permit Receiving Water Limitation VI.A. prohibit storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable water quality standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

34.     Section A(1) and Provision E(2) of the Industrial Permit require

dischargers to have developed and implemented a Storm Water Pollution Prevention Plan ("SWPPP") by October 1, 1992, or prior to beginning industrial activities, that meets all the requirements of the Industrial Permit. Sections X.A. and B. of the New Industrial Permit require development and implementation of site-specific SWPPPs by July 1, 2015 or upon commencement of industrial activity.

35.    The objective of the SWPPP is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Facility and identify and implement site-specific Best Management Practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges. (Industrial Permit, Section A(2); New Industrial Permit, Section X.C.1).

36.    To ensure its effectiveness, the SWPPP must be evaluated on an annual basis, and it must be revised as necessary to ensure compliance with the Permit. (Industrial Permit, Sections A(9), (10); New Industrial Permit, Sections XA. And X.B.1.).

37.    Sections A(3) through A(10) of the Industrial Permit and Sections X.A to X.I. of the New Industrial Permit set forth the requirements for a SWPPP.

38.    The SWPPP must include a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, and areas of industrial activity. (Industrial Permit, Section A(4); New Industrial Permit, Section X.E.).

39.     Dischargers are also required to prepare and implement a monitoring and reporting program ("M&RP"). (Industrial Permit, Sections E(3), B(1); New Industrial Permit, Section XI).

40.    The objective of the M&RP is to ensure that BMPs have been adequately developed and implemented, revised as necessary, and to ensure that storm water discharges are in compliance with the Industrial Permit (up to July 1, 2015) and New

Complaint for Declaratory and Injunctive Relief and Civil Penalties

Industrial Permit (July 1, 2015 and thereafter) Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. (Industrial Permit, Section B(2); New Industrial Permit, Finding J.56).

41.     The Industrial Permit and New Industrial Permit require dischargers to conduct visual observations for the presence of unauthorized non-storm water discharges, to document the source of any discharge, and to report the presence of any discolorations, stains, odors, and floating materials in the discharge.

42.     The Industrial Permit and New Industrial Permit require dischargers to visually observe drainage areas during the wet season (October 1 - May 30) and to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants.

43.     Both the Industrial Permit and New Industrial Permit require dischargers to maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges.

44.     The Industrial Permit requires dischargers to collect a sample from all discharge points during the first storm event of the wet season and during at least one other storm event of the wet season, for a total of two samples per wet season. (Industrial Permit, Section (B)(5)). The New Industrial permit requires dischargers to collect and analyze storm water samples from two storm events with the first half of each reporting year (July 1 to December 31) and two from the second half (January 1 to June 30). (New Industrial Permit, Section XI.B.2.).

45.     Dischargers must analyze each sample for pH, total suspended solids, oil and grease, and for toxic chemicals and other pollutants likely to be present in the storm water discharged from the facility. (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6).

46.     Dischargers must submit also "Annual Reports" to the Regional Board in July of each year. (Industrial Permit, Section B(14); New Industrial Permit, Section

9

XVI.A.).

## V.   STATEMENT OF FACTS

### A.   Escondido Facility

47.     Plaintiffs are informed, believe, and thereon allege the Escondido Facility is a 6-acre concrete ready-mix facility. The Escondido Facility belongs to Sector E of the Industrial Permit and its standard industrial classification (SIC) code is 3273.

48.     Plaintiffs are informed, believe, and thereon allege the Escondido Facility is primarily comprised of concrete batch plant, storage and maintenance building, sand and gravel material piles, fueling area, returned concrete stockpile area, a material unloading area, water recycling sump basins, and office.

49.     Plaintiffs are informed, believe, and thereon allege the Escondido Facility manufactures ready-mixed concrete, which involves the mixing of cement, sand, fly ash, admixtures, water, and aggregate.

50.     Plaintiffs are informed, believe, and thereon allege the Escondido Facility conducts vehicle and truck maintenance, fueling, vehicle and truck washing, and material storage.

51.     Plaintiffs are informed, believe, and thereon allege various industrial materials comprised of metals, oils, lubricants, wastewater, dissolved solids, debris, solvents, and nitrogen are utilized and stored onsite.

52.      Plaintiffs are informed, believe, and thereon allege particulates from operations, oil, grease, suspended and dissolved solids, hazardous waste, and metals such as aluminum, lead, iron and zinc materials are exposed to storm water at the Escondido Facility.

53.     Plaintiffs are informed, believe, and thereon allege that storm water is discharged from at least two discharge points at the Facility into stormwater conveyance systems.

54.      The Escondido Facility discharges into storm water conveyance systems that discharge into Escondido Creek, San Elijo Lagoon, and ultimately the Pacific

Complaint for Declaratory and Injunctive Relief and Civil Penalties

Ocean.

55.     The EPA promulgated regulations for the Section 402 NPDES permit program defining waters of the United States. (S*ee* 40 C.F.R. § 122.2). The EPA interprets waters of the United States to include not only traditionally navigable waters but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and other waters including intermittent streams that could affect interstate commerce. The CWA requires any person who discharges or proposes to discharge pollutants into waters of the United States to submit an NPDES permit application. (40 C.F.R. § 122.21).

56.     The Clean Water Act confers jurisdiction over non-navigable waters that are tributary to traditionally navigable waters where the non-navigable water at issue has a significant nexus to the navigable water. (*See Rapanos v. United States,* 547 U.S. 715 (2006)).  A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." (*Id.* at 780).

57.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. (*Id.* at 783).

58.     Information available to Plaintiffs indicates that each of the surface waters into which the Escondido Facility discharges polluted storm water are tributaries to traditional navigable waters, such as Escondido Creek, San Elijo Lagoon, and the Pacific Ocean.

59.      Plaintiffs are informed, believe, and thereon allege the Escondido Facility's polluted discharges cause, threaten to cause, and/or contribute to the impairment of water quality in Escondido Creek, San Elijo Lagoon and the Pacific Ocean.

60.     Elevated levels of metals, nutrients, and sedimentation have resulted in the inability of Escondido Creek, San Elijo Lagoon and the Pacific Ocean to support its

Complaint for Declaratory and Injunctive Relief and Civil Penalties

beneficial uses. Escondido Creek is impaired for benthic community effects, DDT (Dichlorodiphenyltrichloroethane), Enterococcus, Fecal Coliform, Manganese, Phosphate, Selenium, Sulfates, Total Dissolved Solids, Total Nitrogen, and Toxicity. San Elijo Lagoon is impaired for E. Coli and Enterococcus, Sedimentation/Siltation, and Dissolved Oxygen. The Pacific Ocean shoreline at San Elijo Lagoon is also impaired for E. Coli and Enterococcus.

61.     Water Quality Standards are pollutant concentration levels determined by the State Board and the EPA to be protective of the beneficial uses of the receiving waters.  Discharges above Water Quality Standards contribute to the impairment of the receiving waters' beneficial uses.

62.     The applicable Water Quality Standards include, but are not limited to, those set out by the State of California in the Criteria for Priority Toxic Pollutants, 40 C.F.R. § 131.38 , ("California Toxics Rule" or "CTR") and in the Basin Plan. The CTR limits are, in part, as follows: lead – .065 milligrams per liter (mg/L); copper – .013 mg/L; zinc – .12 mg/L. These numeric criteria are set to protect human health and the environment in the State of California. The CTR limits represented are the maximum concentration levels permissible to achieve health and environmental protection goals.

63.     EPA Benchmarks are the pollutant concentrations above which EPA has determined are indicative of a facility not successfully developing or implementing BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants. (See Multi-Sector General Permits for Stormwater Discharges Associated with Industrial Activity (MSGP), 2015, §§6.2.1, 8.E, Table 8.E-1). The benchmark values provide an appropriate level to determine whether a facility's storm water pollution prevention measures are successfully implemented. (MSGP Fact Sheet, p. 52). Failure to conduct and document corrective action and revision of control measures in response to benchmark exceedances constitutes a permit violation. (*Id*., at p. 65).

64.     EPA has established the following sector-specific benchmark values for Sector E, Glass, Clay, Cement, Concrete, and Gypsum Products: aluminum: 0.75 mg/L;

iron: 1.0 mg/L; total suspended solids: 100 mg/L. (MSGP, §8.E, Table 8.E-1).

65.     The Regional Board's Basin Plan establishes water quality objectives, implementation plans for point and nonpoint source discharges, and prohibitions, and furthers statewide plans and policies intended to preserve and enhance the beneficial uses of all waters in the San Diego region. (*See* Basin Plan at p. 1-1). The Basin Plan identifies several beneficial uses for regional waters, including for Escondido Creek. The Basin Plan establishes the following water quality objectives for the Carlsbad Hydrologic Unit, including Escondido Creek: iron: 0.3 mg/L; pH – not less than 6.5 and not greater than 8.5; phosphorus: .1 mg/L; nitrogen: 1.0 mg/L; manganese: .05 mg/L . (See Basin Plan at Table 3-2; p. 3-13)

**B.     Past and Present Industrial Activity at the Escondido Facility**

66.     Plaintiffs are informed, believe, and thereon allege that, in its Notice of Intent to Obtain Coverage under Industrial Permit submitted to the Regional Board, the Defendant lists its primary Standard Industrial Classification ("SIC") code as 3273 for ready-mixed concrete facilities.

67.     Plaintiffs are informed, believe, and thereon allege that the Defendant engages in manufacturing ready-mixed concrete at the Facility.

68.     Plaintiffs are informed, believe, and thereon allege that the Defendant engages in the mixing of cement, sand, fly ash, admixtures, water and aggregate at the Facility.

69.     Plaintiffs are informed, believe, and thereon allege that additional industrial activities at the site include, but are not limited to: receiving materials outside in uncovered bins and enclosed silos; storing waste concrete disposal piles; loading mixed concrete product onto Superior Mixer trucks; rinsing of trucks and components; maintenance and repair of vehicles and trucks; and vehicle fueling.

70.     The potential pollutant sources associated with the industrial activities at the Escondido Facility include but are not limited to: the outdoor storage areas; equipment storage area; parking areas; loading and unloading areas; maintenance areas;

oil tanks; hazardous waste storage areas; and the on-site material handling equipment such as forklifts.

71.    Plaintiffs are informed, believe, and thereon allege that pollutants present in storm water discharged from the Escondido Facility therefore include but are not limited to: toxic metals such as iron, zinc, lead, and aluminum; nitrogen; dissolved solids; phosphorus; chemicals with high oxygen demand; total suspended solids and pH-affecting substances; hazardous waste; and fugitive and other dust, dirt and debris.

72.    Based upon Plaintiffs' investigation, Plaintiffs are informed, believe, and thereon allege Defendant stores cement, aggregate materials, fly ash, admixtures, hazardous waste, and other materials outside where they are exposed to storm water.

73.     Plaintiffs are informed, believe, and thereon allege that there are containers stored at the Facility that are uncovered and/or uncontained.

74.    Plaintiffs are informed, believe, and thereon allege that at least two discharge points at the Escondido Facility that convey storm water pollution off the site and into area storm water conveyance systems.

75.    Plaintiffs are informed, believe, and thereon allege that the Escondido Facility lacks effective BMPs to control the flow of storm water from the Facility into storm water conveyance systems.

76.    Suspended solids, metal particles, and other pollutants have been and continue to be conveyed from the Escondido Facility into storm drain conveyance systems.

77.    Plaintiffs are informed, believe, and thereon allege that during rain events at the Escondido Facility, storm water carries pollutants from the outdoor storage areas, bins and dumpsters, fueling area, hazardous waste storage areas, floor contaminants, equipment, and other sources directly into the storm drain conveyance systems.

78.    Plaintiffs are informed, believe, and thereon allege that the Escondido Facility pollution control measures are ineffective in controlling the exposure of pollutant sources to storm water at the Escondido Facility.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

### C.    The Escondido Facility and its Associated Discharge of Pollutants

79.     Plaintiffs are informed, believe, and thereon allege that with every significant rain event, the Escondido Facility discharges polluted storm water from the industrial activities at the facility via the City of Escondido's storm drain system and into the Receiving Waters.

80.     Plaintiffs are informed, believe, and thereon allege that the Receiving Waters into which the Escondido Facility discharges polluted storm water are waters of the United States and therefore the Industrial Permit properly regulates discharges to those waters.

81.     Surface waters that cannot support their Beneficial Uses listed in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of the Clean Water Act. According to the 2016 303(d) List of Impaired Water Bodies, Escondido Creek, San Elijo Lagoon, and the Pacific Ocean at the shoreline of San Elijo Lagoon are impaired.

82.     Because discharges from the Escondido Facility contain particulates, nutrients, and metals, the Escondido Facility's polluted discharges cause and/or contribute to the impairment of water quality in the Receiving Waters.

83.     Superior Ready Mix's neighbor California Metal Services receives run-on directly from the Escondido Facility without intervening inputs. California Metal Services' samples of the Escondido Facility's run-on demonstrates the Escondido Facility continuously discharges contaminated storm water during rain events which have not been sampled and contaminated unauthorized non-storm water year-round.

84.     Plaintiffs are informed, believe, and thereon allege that the storm water discharged from the Escondido Facility has exceeded the CTR Water Quality Standards applicable to zinc in California. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain levels of zinc as high as 1.14 mg/L which is almost 10 times the CTR limit of 0.12 mg/L and the EPA /././

Benchmark value of 0.12 mg/L.[1] (MSGP, §8.E, Table 8.E-1; Fact Sheet, p. 56).

85.    Plaintiffs are informed, believe, and thereon allege that the storm water discharged from the Escondido Facility has exceeded the CTR Water Quality Standards applicable to copper in California. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain copper levels of 0.356 mg/L which is 27 times the CTR limit of 0.013 mg/L and 36 times the EPA Benchmark value for copper of 0.014 mg/L.[2] (MSGP, Fact Sheet, p. 55).

86.    Plaintiffs are informed, believe, and thereon allege that the storm water discharged from the Escondido Facility has also exceeded the EPA Benchmark value for aluminum. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain levels of aluminum at 10.8 mg/L, which is 14 times the EPA Benchmark value for aluminum of 0.75 mg/L. (MSGP, §8.E, Table 8.E-1).

87.    Plaintiffs are informed, believe, and thereon allege that the storm water discharged from the Escondido Facility has exceeded the EPA Benchmark value and Basin Plan water quality objective for iron. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain levels of iron as high as 13 mg/L, which is 43 times the Basin Plan water quality objective for Escondido Creek and almost 13 times the EPA benchmark value for iron of 1.0 mg/L. (MSGP, §8.E, Table 8.E-1, Fact Sheet, p. 55).

88.    Plaintiffs are informed, believe, and thereon allege that the storm water discharged from the Escondido Facility has exceeded the Basin Plan water quality objective for hydrogen ion concentration. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain pH levels as high as 11.83, while the Basin Plan water quality objective maximum for Escondido

---

[1] This benchmark value is hardness-dependent. Assuming the 100 mg/L water hardness range applies, the benchmark is .13 mg/L.
[2] This benchmark value is hardness-dependent. Assuming the 100 mg/L water hardness range applies, the benchmark is .014 mg/L.

Creek is 8.5. (MSGP, §8.E, Table 8.E-1, Fact Sheet, p. 55).

89.    Plaintiffs are informed, believe, and thereon allege that storm water discharged from the Escondido Facility has exceeded the EPA Benchmark value for chemical oxygen demand. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain levels of chemical oxygen demand of 205 mg/L, which is almost twice times the EPA benchmark value of 120 mg/L (MSGP, §8.E, Table 8.E-1, Fact Sheet, p. 55).

90.    Plaintiffs are informed, believe, and thereon allege that storm water discharged from the Escondido Facility has exceeded the EPA Benchmark value for total suspended solids. For example, data obtained by Plaintiffs indicates Defendant's discharges during the 2017-2018 reporting year contain levels of total suspended solids as high as 866, which is almost nine times the EPA benchmark value of 100 mg/L (MSGP, §8.E, Table 8.E-1, Fact Sheet, p. 55).

91.    Plaintiffs are informed, believe, and thereon allege that unauthorized non-storm water discharged from the Escondido Facility has exceeded the EPA Benchmark values for aluminum and total suspended solids.

92.    Plaintiffs are informed, believe, and thereon allege that unauthorized non-storm water discharged from the Escondido Facility has exceeded the water quality objectives for copper, iron and pH.

93.    Plaintiffs are informed, believe, and thereon allege that during every significant rain event that has occurred at the Escondido Facility since April 25, 2013 through the present, Defendant has discharged and continues to discharge storm water from the Escondido Facility that contains pollutants at levels in violation of the prohibitions and limitations set forth in the Industrial Permit and other applicable Water Quality Standards.

94.    Storm water discharges from the Escondido Facility contain pollutant concentration levels that are above both EPA Benchmarks.

95.    Plaintiffs are informed, believe, and thereon allege, from visual

Complaint for Declaratory and Injunctive Relief and Civil Penalties

observations, sample results, and investigations available to Plaintiffs, Defendant has failed and continues to fail to develop and/or implement adequate BMPs to prevent the discharge of polluted storm water from the Escondido Facility.

96.    The inadequacy of the BMPs at the Escondido Facility is a result of Defendant's failure to develop and implement an adequate SWPPP and companion M&RP for this Facility.

97.    Plaintiffs are informed, believe, and thereon allege that since at least April 25, 2013 through the present, Defendant has failed to develop and implement BMPs that meet the standards of BAT/BCT at the Escondido Facility in violation of Effluent Limitation B(3) of the Industrial Permit and Effluent Limitation I.D. and V.A. of the New Industrial Permit.

98.    Each day that Defendant has failed and continues to fail to implement adequate BMPs to achieve BAT/BCT constitutes a separate violation of the Industrial Permit and the CWA.

99.    Based on their investigation of the Escondido Facility, Plaintiffs are informed and believe that Defendant has failed to develop and implement an adequate SWPPP since at least April 25, 2013 through the present.

100.    Each day that Defendant has failed and continues to fail to implement an adequate SWPPP constitutes a separate violation of the Industrial Permit and the CWA.

101.    Plaintiffs are informed, believe, and thereon allege that Defendant has failed to submit written reports to the Regional Board identifying additional BMPs necessary to achieve BAT/BCT at the Escondido Facility since at least April 25, 2013, in violation of Receiving Water Limitations C(3) and C(4) of the Industrial Permit and New Industrial Permit Receiving Water Limitations VI.A.-C.

102.    Each day that Defendant has operated the Escondido Facility without meeting this reporting requirement of the Industrial Permit constitutes a separate violation of the Industrial Permit and the CWA.

/././

Complaint for Declaratory and Injunctive Relief and Civil Penalties

### D.    Defendant's Monitoring Program

103.    From April 25, 2013 through June 30, 2015, the Escondido Facility was required to sample at least two storm events every rainy season in accordance with the sampling and analysis procedures set forth at Industrial Permit Section B(5).

104.    Sampling and analysis procedures require that a sample be taken from all discharge locations at the Escondido Facility and that at least two samples are taken during the wet season: (1) one in the first storm event of a particular wet season; and (2) at least one other storm event in the wet season. (Industrial Permit, Sections B(5) and B(7)).

105.    From June 30, 2015 through the present dischargers are required to sample at least two storm events within the first half of each reporting year (July 1 to December 31) and two storm events within the second half of each reporting year (January 1 to June 30) in accordance with the sampling and analysis procedures in New Industrial Permit Section XI.B.

106.    Pursuant to the Industrial Permit, a Group Monitoring Plan participant was required to collect and analyze samples from at least two storm events during a five-year period. (Industrial Permit Section B(15)(b)).

107.    Under the New Industrial Permit, as a Compliance Group Participant, Defendant is required to collect and analyze storm water samples from at least one qualifying storm event within the first half of the reporting year and another within the second half. (New Industrial Permit, Section XI.B.3.).

108.    Dischargers must analyze each sample for pH, total suspended solids, oil and grease, and for toxic chemicals and other pollutants likely to be present in the storm water discharged from the facility. (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6).

109.    The Escondido Facility is required to sample for iron pursuant to its SIC code. (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6).

110.    All monitoring data must be uploaded to SMARTS within 30 days of

obtaining all results for each sampling event. (New Industrial Permit, XI.B.11.a)

111.    Plaintiffs are informed, believe, and thereon allege that despite the extremely high levels of pollutants reported in the samples that were taken at the Escondido Facility or by Defendant's neighbor, the Defendant has not sampled and submitted sampling reports as required.

112.    Plaintiffs are informed, believe, and thereon allege that Defendant has not successfully sampled and reported during the 2012-2013, 2013-2014, 2014-2015, 2015-2016, 2016-2017, and 2017-2018 reporting years.

113.    Plaintiffs are informed, believe, and thereon allege that Defendant continues to fail to successfully sample and report as required under the New Industrial Permit. (New Industrial Permit, Section IX.B.).

114.    Plaintiffs are informed, believe, and thereon allege that Defendant has not successfully and consistently sampled and reported for numerous pollutants found onsite as required by the New Industrial Permit. Defendant has failed to monitor its discharges for zinc, aluminum, total dissolved solids, chemical oxygen demand, phosphorus, and nitrogen.

115.    Information available to Plaintiffs indicates that Defendant has not submitted any reports pursuant to Receiving Water Limitation C(4)(a) within 60-days of becoming aware of levels in its storm water exceeding the EPA Benchmark values or applicable Water Quality Standards, or filed any reports describing the Escondido Facility's noncompliance with the Industrial Permit pursuant to Section C(11)(d) of the Industrial Permit.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Discharges of Contaminated Storm Water in
Violation of the Industrial Permit's Discharge Prohibitions and
Receiving Water Limitations and the Clean Water Act
(Violations of 33 U.S.C. §§ 1311(a), 1342)**

116.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

117.    Plaintiffs are informed, believe, and thereon allege that as a result of the operations at the Escondido Facility, during every significant rain event, storm water containing pollutants harmful to fish, plant, bird life, and human health is discharged from the Escondido Facility to the Receiving Waters.

118.    Plaintiffs are informed, believe, and thereon allege that Defendant's discharges of contaminated storm water have caused, continue to cause, and threaten to cause pollution, contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the Industrial Permit and Sections III.C. and VI.C of the New Industrial Permit.

119.    Plaintiffs are informed, believe, and thereon allege that these discharges of contaminated storm water have, and continue to, adversely affect human health and the environment in violation of Receiving Water Limitation C(1) of the Industrial Permit and Section VI.B. of the New Industrial Permit.

120.    Plaintiffs are informed, believe, and thereon allege that these discharges of contaminated storm water have caused or contributed to and continue to cause or contribute to an exceedance of Water Quality Standards in violation of Receiving Water Limitation C(2) of the Industrial Permit, and Discharge Prohibition III.D. and Receiving Water Limitation VI.A. of the New Industrial Permit.

121.    Plaintiffs are informed, believe, and thereon allege that from at least April 25, 2013 through the present, Defendant has discharged, and continues to discharge, contaminated storm water from the Escondido Facility to Receiving Waters in violation of the prohibitions of the New Industrial Permit and Industrial Permit.  Thus, Defendant is liable for civil penalties for violations of the Industrial Permit, New Industrial Permit, and the CWA.

122.    Plaintiffs are informed, believe, and thereon allege that Defendant's violations of the New Industrial Permit and the CWA are ongoing.

123.    Defendant will continue to be in violation of the New Industrial Permit requirements each day the Escondido Facility discharges contaminated storm water in

Complaint for Declaratory and Injunctive Relief and Civil Penalties

violation of New Industrial Permit prohibitions.

124.    Every day that Defendant has discharged and/or continues to discharge polluted storm water from the Escondido Facility in violation of the Industrial Permit and New Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

125.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 25, 2013 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

126.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiffs pray judgment against Defendant as set forth hereafter.

## SECOND CAUSE OF ACTION
**Failure to Develop and/or Implement BMPs that Achieve Compliance with Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology In Violation of the Industrial Permit and the Clean Water Act (Violations of 33 U.S.C. §§1311, 1342)**

127.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

128.    Plaintiffs are informed, believe, and thereon allege that Defendant has failed to develop and/or implement BMPs that achieve compliance with BAT/BCT requirements of the Industrial Permit and the CWA.

129.    Sampling of the Escondido Facility's storm water discharges as well as Plaintiffs' observations of the Escondido Facility demonstrate that Defendant has not developed and has not implemented BMPs that meet the standards of BAT/BCT. Thus, Defendant is in violation of Effluent Limitations of the Industrial Permit and New Industrial Permit.

130.    Plaintiffs are informed, believe, and thereon allege that Defendant has been in daily and continuous violation of the BAT/BCT requirements of the Industrial Permit and the CWA every day since at least April 25, 2013, and of the BAT/BCT requirements of the New Industrial Permit since July 1, 2015.

131.    Plaintiffs are informed, believe, and thereon allege that Defendant's violations of the Effluent Limitations and the CWA are ongoing.

132.    Defendant will continue to be in violation every day the Escondido Facility operates without adequately developing and/or implementing BMPs that achieve BAT/BCT to prevent or reduce pollutants associated with industrial activity in storm water discharges at the Escondido Facility.

133.    Every day that Defendant operates the Escondido Facility without adequately developing and/or implementing BMPs that achieve BAT/BCT in violation of the Industrial Permit or New Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

134.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 29, 2011 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

135.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiffs pray judgment against Defendant as set forth hereafter.

### THIRD CAUSE OF ACTION
**Failure to Develop and/or Implement an Adequate
Storm Water Pollution Prevention Plan
in Violation of the Industrial Permit and Clean Water Act
(Violations of 33 U.S.C. §§ 1311, 1342)**

136.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

137.    Plaintiffs are informed, believe, and thereon allege that Defendant has failed to develop and/or implement an adequate SWPPP for the Escondido Facility that meets the requirements set out in Section A and Provision E of the Industrial Permit and Section X of the New Industrial Permit.

138.    Defendant has been in violation of the SWPPP requirements every day since at least April 25, 2013.

139.    Defendant's violations of the Industrial Permit, New Industrial Permit and the CWA are ongoing.

140.    Defendant will continue to be in violation of the SWPPP requirements every day the Escondido Facility operates with an inadequately developed and/or implemented SWPPP for the Escondido Facility.

141.    Each day that Defendant operates the Escondido Facility without developing and/or implementing an adequate SWPPP is a separate and distinct violation of Section 301(a) of the CWA 33 U.S.C. §1311(a).

142.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 25, 2013 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

143.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiffs pray judgment against Defendant as set forth hereafter.

### FOURTH CAUSE OF ACTION
**Failure to Implement an**
**Adequate Monitoring and Reporting Program**

Complaint for Declaratory and Injunctive Relief and Civil Penalties

## In Violation of the Industrial Permit and the Clean Water Act
### (Violations of 33 U.S.C. §§ 1311, 1342)

144.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

145.    Plaintiffs are informed, believe, and thereon allege that Defendant has failed to develop and/or implement an adequate M&RP for the Escondido Facility as required by Section B and Provision E(3) of the Industrial Permit and Section XI of the New Industrial Permit.

146.    Plaintiffs are informed, believe, and thereon allege that conditions at the Escondido Facility, as determined via sampling of storm water discharges from the Escondido Facility, and the annual reports submitted by Defendant all demonstrate that the Escondido Facility has not implemented an adequate M&RP that meets the requirements of the Industrial Permit and New Industrial Permit.

147.    Plaintiffs are informed, believe, and thereon allege that Defendant has failed and continues to fail to collect samples from all discharge points during all storm events in violation of Section B(5) of the Industrial Permit and Section XI.B.4.

148.    Plaintiffs are informed, believe, and thereon allege that Defendant has failed and continues to fail to identify inadequacies in its SWPPP and BMPs.

149.    Defendant's violations of the Industrial Permit, New Industrial Permit and the CWA are ongoing.

150.    Defendant will continue to be in violation of the Industrial Permit, New Industrial Permit and the CWA each day the Escondido Facility operates with an inadequately implemented M&RP.

151.    Each day Defendant operates the Escondido Facility without implementing an adequate M&RP for the Escondido Facility is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. §1311(a).

152.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 25, 2013 to the present pursuant to Sections 309(d) and 505 of the CWA, 33

Complaint for Declaratory and Injunctive Relief and Civil Penalties

U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

153.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiffs pray judgment against Defendant as set forth hereafter.

### FIFTH CAUSE OF ACTION
**Failure to Conduct Required Rain Event Sampling in Violation of the Industrial Permit**

154.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

155.    Plaintiffs are informed, believe, and thereon allege that Defendant is in violation of Industrial Permit, Section B(5)(c) by failing to sample for pollutants found at the Escondido Facility, including but not limited to zinc, aluminum, total dissolved solids, chemical oxygen demand, phosphorus, and nitrogen.

156.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 25, 2013 to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

157.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a).  Continuing commission of the omissions alleged above would irreparably harm the Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiffs pray judgment against Defendant as set forth hereafter.

### SIXTH CAUSE OF ACTION
**Discharge of Unauthorized Non-Storm Water**

158.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

26

159.    Plaintiffs are informed, believe, and thereon allege that Defendant has and continues to discharge unauthorized non-storm water in violations of Discharge Prohibition A(1) of the Industrial Permit and Discharge Prohibition Section III.B and Sections IV.A-B of the New Industrial Permit.

160.     Plaintiffs are informed, believe, and thereon allege that Defendant discharged unauthorized non-storm water into the discharge point which daylights at the neighboring facility, California Metal Services.

161.    Plaintiffs are informed, believe, and thereon allege that Defendant's unauthorized non-storm water discharges contain industrial pollutants above applicable Water Quality Standards and EPA benchmarks.

162.    Defendant's violations of the Industrial Permit, New Industrial Permit, and the CWA are ongoing.

163.    Every day Defendant discharges unauthorized non-storm water is a separate and distinct violation of the Industrial Permit, New Industrial Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

164.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 25, 2013 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

165.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiffs pray judgment against Defendant as set forth hereafter.

/././

/././

/././

# VII.    RELIEF REQUESTED

166.    Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

a.    A Court order declaring Defendant to have violated and to be in violation of Section 301(a) of the CWA 33 U.S.C. § 1311(a) for its unlawful discharges of pollutants from the Escondido Facility in violation of the substantive and procedural requirements of the Industrial Permit, and as of July 1, 2015, the New Industrial Permit;

b.    A Court order enjoining the Defendant from violating the substantive and procedural requirements of the New Industrial Permit;

c.    A Court order assessing civil monetary penalties of $37,500 per day per violation for each violation of the CWA at the Escondido Facility occurring through November 1, 2015 and $51,570 per violation occurring on or after November 2, 2015, as permitted by 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4;

d.    A Court order requiring Defendant to take appropriate actions to restore the quality of waters impaired by its activities;

e.    A Court order awarding Plaintiffs their reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d);

/./../
/./../
/./../
/./../
/./../
/./../
/./../
/./../
/./../

f.      Any other relief as this Court may deem appropriate.

Dated: March 5, 2019

Respectfully submitted,

COAST LAW GROUP LLP


By: s/Livia B. Beaudin
LIVIA B. BEAUDIN
Attorneys for Plaintiffs
COASTAL ENVIRONMENTAL
RIGHTS FOUNDATION
E-mail: livia@coastlawgroup.com


SAN DIEGO COASTKEEPER


By: s/Matt O'Malley
MATT O'MALLEY
Attorney for Plaintiffs
SAN DIEGO COASTKEEPER
E-mail: matt@sdcoastkeeper.org

Complaint for Declaratory and Injunctive Relief and Civil Penalties