1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

10

11   SAN DIEGO COASTKEEPER, a California       Civil Case No. 3:19-cv-00439-DMS-KSC
     non-profit corporation, COASTAL
12   ENVIRONMENTAL RIGHTS                       **CONSENT DECREE**
     FOUNDATION, a California non-profit
13   corporation,

14
                    Plaintiffs,               **(Federal Water Pollution Control Act,**
15                                            **33 U.S.C. §§ 1251 *et seq*.)**
              vs.
16
17   SUPERIOR READY MIX CONCRETE,
     L.P., a California Limited Partnership;
18
19                  Defendant.

20
21
22
23
24
25
26
27
28

Consent Decree                                        Civil Case No. 3:19-cv-00439-DMS-KSC

# CONSENT DECREE

The following Consent Decree is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF", collectively "Plaintiffs") and Superior Ready Mix Concrete L.P. ("Superior Ready Mix" or "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS,** Coastkeeper asserts that it is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS,** CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS,** CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS,** Superior Ready Mix, is the owner and operator of a concrete ready-mix facility located at 1508 W. Mission Road, Escondido, California, 92029, hereinafter referred to as the "Facility";

**WHEREAS,** Plaintiffs' assert that their members live and/or recreate in and around Escondido Creek, San Elijo Lagoon, and the Pacific Ocean, area waters which Plaintiffs allege receive discharges from the Facility;

**WHEREAS,** the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit") and Order No. 2014-

0057-DWQ ("2014 Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, via a letter dated April 25, 2018 that Plaintiffs sent to Superior Ready Mix, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and 2014 Storm Water Permit at the Facility;

**WHEREAS**, on March 5, 2019, Plaintiffs filed a complaint against Superior Ready Mix in the United States District Court, Southern District of California (Case No. 3:19-cv-00439-DMS-KSC), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Facility ("Complaint");

**WHEREAS**, Plaintiffs allege Superior Ready Mix to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the 2014 Storm Water Permit and the Clean Water Act with respect to the Facility;

**WHEREAS**, Superior Ready Mix denies all allegations in the Notice Letter and Complaint relating to the Facility;

**WHEREAS**, Plaintiffs and Superior Ready Mix have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Superior Ready Mix pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

/./.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.      Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.      Plaintiffs have standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

6.      Where used in both documents, the use of defined terms herein shall have the same meaning as under the 2014 Storm Water Permit.

## I.   OBJECTIVES

7.      It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve the allegations by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the 2014 Storm Water Permit and all applicable provisions of the Clean Water Act. Specifically, Defendant agrees to comply with Receiving Water Limitation VI.A. in the 2014 Storm Water Permit which requires that Defendant "shall ensure that industrial storm water discharges and authorized Non-Storm Water Discharges ("NSWDs") do not cause or contribute to the exceedance of any applicable water quality standards in any affected receiving water," and Effluent Limitation V.A. of the 2014 Storm Water Permit which requires that

Defendant "shall implement Best Management Practices ("BMPs") that comply with the BAT/BCT requirements of the 2014 Storm Water Permit to reduce or prevent discharges of pollutants in Defendant's storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability." Defendant shall develop and implement BMPs necessary to achieve compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the 2014 Storm Water Permit.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

8.     Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

9.     The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

10.     This Consent Decree shall terminate two years after the Effective Date ("Termination Date"), unless: (1) Defendant has failed to collect samples from at least two qualified storm events ("QSEs") in each of the first two years of the term of this Consent Decree (also referred to herein as the "Agreement"); (2) Defendant has failed to finalize installation or implementation of all BMPs proposed in an Action Plan; or (3) there is a prior ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree. Under the circumstance described in (1) or (2), above, the Agreement shall terminate three years from the Effective Date, and under (3), the Agreement shall terminate upon the final resolution of the dispute.

11.     Plaintiffs may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to annual site inspections described below.

### III.   COMMITMENTS OF THE SETTLING PARTIES

**A. Storm Water Pollution Control Best Management Practices.**

12.     It is the express purpose of the Settling Parties entering into this Agreement to further the objectives set forth in the Clean Water Act and to resolve the allegations made by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this Agreement, the requirements of the Storm Water Permit, and all applicable provisions of the CWA.

13.     In addition to maintaining the current structural and non-structural Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Prevention Plans ("SWPPP"), Defendant shall develop and implement BMPs necessary to comply with the provisions of this Agreement and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and to comply with the Storm Water Permit's Receiving Water Limitations.

14.     The list of BMPs that Defendant agrees to develop and/or implement for the Facility as part of this Agreement is attached hereto as Exhibit A.

**B. Discharge Locations and Storm Water Sampling.**

15.     Discharge Locations. The current and future storm water sample locations for the Facility are identified in Exhibit B.  Should the future storm water sample locations change from what is presently depicted on Exhibit B, Defendant will provide Plaintiffs with updated Exhibits. Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

16.1.   Frequency. During the term of this Consent Decree, Superior Ready Mix shall sample four (four QSEs) during each Reporting Year, with two (2) samples during the first half of the Reporting Year (July 1 through December

31) and two (2) samples during the second half of the reporting year (January 1 through June 30) at the Facility. If, prior to March 1, Defendants have collected samples from two (2) or fewer QSEs during that Reporting Year, Defendants shall collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the Reporting Year, if feasible and if QSE's occur. In any case, no two (2) samples may be from the same QSE.

16.2. <u>Contained or Stored Storm Water</u>. To the extent water is stored or contained, Defendant shall sample the stored or contained water at the Facility before it is released or discharged even if not during operating hours.

16.3. <u>Parameters</u>. Defendant shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits.

16.4. <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Agreement.

16.5. <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

16.6. <u>Hold Time</u>. All samples collected from the Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements of pH, Defendant shall only use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology, i.e., 40 C.F.R., Part 136.

16.7. <u>Results</u>. Defendant shall request that sample analysis results be reported to them within fourteen (14) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

16.8. <u>Reporting</u>. Defendant shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the

laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 16.1 and 16.2 collected at the Facility, within seven (7) business days of receiving the results.

**C. Reduction of Pollutants in Discharges.**

17.    Contaminant Reduction. Unless otherwise provided by this Agreement, Defendant shall develop and implement BMPs to reduce pollutants in storm water discharges from the Facility to levels below those in Table 1 ("Numeric Limits").

**Table 1. Numeric Limits**

| Pollutant | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc | 0.26 mg/L* |
| Total Recoverable Copper | 0.0332 mg/L* |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Total Recoverable Iron | 0.3 mg/L |
| Phosphorous | 0.1 mg/L |
| pH | 6.0 – 9.0 s.u. |

*  The values listed are the more conservative of the NALs and the hardness-adjusted California Toxics Rule values.

18.    Action Plan for Table 1 Exceedances.  If Defendant's monitoring reveals an exceedance of the numeric limits specified in Table 1 for any constituent in two sampled QSEs in one year,[1] Defendant shall submit a plan to Plaintiffs for reducing the level of that constituent to Table 1 Limits ("Action Plan"). The Action Plan shall be designed to prevent future exceedances for that constituent at the Facility, and shall be prepared by a Qualified Industrial Storm Water Professional ("QISP"). The Action Plan must be submitted to Plaintiffs within forty-five (45) days of Defendant's receipt of sampling data

---

[1] The year as described in this Agreement shall refer to the reporting year under the 2014 Storm Water Permit, i.e., July 1 – June 30.

showing exceedances of Table 1 Limits.[2] Submitting an Action Plan that does not include all of the requirements in this paragraph will be considered a missed deadline. Discharges from the Facility occurring as part of a single QSE that exceeds the Design Storm Standard, i.e., the 85th percentile, 24-hour storm, under the 2014 Storm Water Permit shall not trigger or otherwise evidence the requirement to prepare an Action Plan so long as on-site capture BMPs meet or exceed the design requirements of the 2019 Amended Industrial General Permit (Unofficial draft)[3], Attachment I, sections II.E.1-4., and full drawdown of storage occurs prior to the next QSE.  However, where a second QSE occurs later than 24 hours from the first QSE and prior to full drawdown, any discharge that occurs under the second QSE triggers and otherwise evidences the requirement to prepare an Action Plan.

   18.1.   <u>Action Plan Requirements</u>. An Action Plan shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including either preventing the exposure of pollutant and pollutant sources to storm water and/or other measures designed to reduce pollutant concentrations to those below Table 1 Numeric Limits; and (4) time schedules for implementation of the proposed BMPs (if any). The time schedule(s) for implementation of additional BMPs shall ensure that all BMPs are implemented as soon as possible but no more than sixty (60) days for nonstructural BMPs, and one hundred twenty (120) days for structural BMPs, after Plaintiffs provide Defendant comments on the Action Plan, unless the Settling Parties agree on a later date based on the time needed to

---

[2] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Storm Water Permit.

[3] 2018 Amended Industrial General Permit (Unofficial draft) can be accessed at: https://www.waterboards.ca.gov/water_issues/programs/stormwater/docs/industrial/unoff_igp_amend.pdf

design, permit, procure, and install the necessary equipment, or implementation within the required time period is not possible due to Force Majeure, as defined below. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Article VI below.

18.2. <u>Sampling Reduction</u>. Where two non-detections of Total Recoverable Zinc, Total Recoverable Copper, Total Recoverable Aluminum, Nitrate + Nitrite Nitrogen, or Phosphorous occur in a year, the parameter may be removed from Table 1, above.

18.3. <u>Action Plan Review</u>. Plaintiffs shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments on the Action Plan. Within twenty-one (21) days of Defendant's receipt of Plaintiffs' comments on the Action Plan, Defendant shall consider Plaintiffs' comments and shall either incorporate them into the Action Plan or, if Defendant declines to accept one or more of Plaintiffs' comments, provide Plaintiffs with a written explanation of the grounds for rejection.

18.4. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Article VI below.

19.    Defendant shall contact Plaintiffs to request an extension of any deadline set forth in this Agreement, if necessary, at least seven (7) days prior to the deadline at issue. Failure to request an extension in this timeframe will be considered a missed deadline.

20.    Defendant shall revise its SWPPP and/or Monitoring & Reporting Plans ("M&RP") as applicable within thirty (30) days of the deadline to respond to Plaintiffs' comments on an Action Plan, or the final resolution of any disputes under the Action

Plan, whichever comes first. Defendant shall notify Plaintiffs in writing when the final Action Plan has been completely implemented, and the SWPPP and/or M&RP have been revised.

**D. <u>Visual Observations.</u>**

21.    All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Agreement, and shall include at least the following:

21.1. <u>Storm Water Discharge Observations</u>. During the life of this Agreement, Defendant shall conduct visual observations at each point where storm water is discharged during each Qualifying Stormwater Event, as that term is defined in the Storm Water Permit.

21.2. <u>Non-Storm Water Discharge Observations</u>. During the life of this Agreement, Defendant shall conduct monthly non-storm water visual observations at each discharge point.

22.    Defendant shall maintain logs of the visual observations, which shall be available for review on site for a period of three (3) years in conformance with the Storm Water Permit, and shall make these records available for Plaintiffs' review via email within five (5) business days of the request.

**E. <u>Employee Training.</u>**

23.    Within sixty (60) days of the Effective Date, Defendant shall conduct additional employee training in order to familiarize employees at the Facility with the requirements of the Storm Water Permit and this Agreement. The training program shall include use of written training materials needed for effective implementation of the training program. Defendant shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Agreement, and that these employees are properly trained to perform the required activities.

24.    The training program shall require at least the following:

24.1. <u>Non-Storm Water Discharge Training</u>. Defendant shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which improper practices may produce non-storm water discharges at the Facility, and how to detect and prevent them;

24.2. <u>BMP Training</u>. Defendant shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility;

24.3. <u>Sampling Training</u>. Defendant shall designate an adequate number of employees or consultants to ensure the collection of storm water samples from each discharge location as required by this Agreement and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

24.4. <u>Visual Observation Training</u>. Defendant shall provide training to all individuals performing visual observations at the Facility pursuant to this Agreement and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

25. Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Agreement, by a private consultant or a representative of Defendant who is familiar with the requirements of this Agreement and the Storm Water Permit. The training shall be repeated as necessary to ensure that a sufficient number of employees are familiar with the requirements of this Agreement, the Storm Water Permit, and the Facility's SWPPP and M&RP, as appropriate to the particular employee's job descriptions and sufficient for complying with this Agreement

and the Storm Water Permit. Any new employee who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Agreement shall receive training within twenty (20) business days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Agreement, whichever comes later.

26.     Defendant shall maintain training records to document compliance with Article II.E of this Agreement and shall make these records available for Plaintiffs' review at the Facility upon request during the term of this Agreement. The Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary to reflect the training program required by this Agreement.

**F.** **Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

27.     Within sixty (60) days of the Effective Date of this Agreement, Defendant shall revise the Facility's SWPPP and/or M&RP as applicable to include:

27.1.   All BMPs that are currently utilized at the Facility;

27.2.   All BMPs identified and developed pursuant to this Agreement and/or the Storm Water Permit;

27.3.   The specific individual(s) or positions responsible for compliance with the Storm Water Permit and this Agreement;

27.4.   A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Agreement;

27.5.   A description of each industrial activity, all potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source;

27.6.   Incorporate the requirements of the Storm Water Permit and this Agreement.

28.     Additional and Ongoing Revisions to SWPPP and/or M&RP. Defendant shall revise the SWPPP and/or M&RP if there are any changes in the Facility's operations that may possibly affect the quality of storm water discharges at the, including

but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan.

29. <u>Commenting on Revised SWPPP and/or M&RP</u>. Defendant shall submit any revised SWPPP and/or M&RP to Plaintiffs within five (5) business days of completion.

29.1. For any SWPPP or M&RP revisions that are not the result of an Action Plan, Plaintiffs shall provide comments, if any, to Defendant within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from Plaintiffs, Defendant shall incorporate Plaintiffs' comments into any revised SWPPP and/or M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution provisions of this Agreement, set out in Article VI below.

## IV.  COMPLIANCE MONITORING AND REPORTING

30. <u>Site Inspections</u>. Each Reporting Year for the life of this Agreement, Plaintiffs and their representatives may conduct one (1) noticed site inspection per Reporting Year. The site inspections shall occur during normal business hours, and Plaintiffs shall provide Defendant with five (5) business days' notice of an intended inspection. If an inspection is noticed, Plaintiffs will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Plaintiffs conduct their inspection during a QSE. Plaintiffs will make efforts to conduct their inspection during a QSE, but a lack of a QSE will not prevent Plaintiffs from conducting the inspection. During inspections, Plaintiffs' representatives will wear safety goggles, hard hats, vests, and any other appropriate safety clothing and footwear recommended by Defendant, and remain in the presence of Defendant's representatives at all times. Plaintiffs' inspection team shall consist of no more than four (4) persons. Plaintiffs shall be allowed to take photographs and/or record video(s) of the Facility during the inspection, however, Plaintiffs must not take video or pictures of any materials or equipment at the Facility

identified by Defendant as consisting of, indicating or including confidential proprietary business materials or processes, or any trade secrets, as that term is defined under the Uniform Trade Secret Act, 18 U.S.C. § 1839. If any such photos videos are inadvertently taken, Plaintiffs' will delete such materials as soon as reasonably practicable and not publish, publicize, or in any way release to members of the public any such materials.

31.    During the site inspection, Plaintiffs and/or their representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring records, reports, and all sampling data produced in accordance with paragraphs 16.1 and 16.2 of this Agreement. In addition, during the site inspection, Plaintiffs and/or their representatives may collect split samples of discharges from QSEs, even if outside of the first four hours of discharge, from the Facility, though any such samples should be appropriately identified and the time of the sampling shall be disclosed to Defendant. Any samples collected by Plaintiffs shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments.  Defendant shall have an opportunity to take concurrent measurements using their own equipment.  Copies of the complete laboratory reports shall be provided to Defendant within five (5) business days of receipt. Plaintiffs shall bear all costs of inspection, sampling, and analysis.

32.    Reporting and Documents. During the life of this Agreement, Defendant shall copy Plaintiffs on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities, unless such materials contain confidential proprietary business or trade secret material, in which case such information may be removed or redacted prior to non-concurrent submittal to Plaintiffs, which shall be provided to Plaintiffs within three (3) business days of submittal to the aforementioned agencies. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or

local agency, county or municipality shall be provided to Plaintiffs within ten business (10) days of receipt by Defendant.

33.     <u>Compliance Monitoring and Oversight</u>.  Defendant shall pay a total of ten thousand dollars ($10,000.00) to compensate Plaintiffs for costs and fees to be incurred for monitoring the Facility's compliance with this Agreement.  Payment shall be made within ten (10) business days of the Effective Date payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

34.     <u>Action Plan Payment</u>.  Defendant shall pay five thousand dollars ($5,000) per year for Plaintiffs' reasonable costs to review any Action Plan submitted.  Payment shall be made within five (5) business days of the submittal of an Action Plan and payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

## V.     ENVIRONMENTAL PROJECT, REIMBURSEMENT OF LITIGATION FEES AND COSTS, AND STIPULATED PAYMENTS

35.     <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, Defendant agrees to make a payment totaling thirty thousand dollars ($30,000.00) to the Escondido Creek Conservancy to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries. Payment shall be made payable to: the Escondido Creek Conservancy via certified U.S. Mail to ATTN: Ann Van Leer PO Box 460791 Escondido, CA 92046 within ten (10) business days of the Effective Date.

36.     <u>Reimbursement of Fees and Costs</u>. Defendant shall pay a total of sixty thousand dollars ($60,000.00) to Coast Law Group, LLP and San Diego Coastkeeper to reimburse investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and

negotiating this Agreement. Payments shall be made within ten (10) business days of the Effective Date and payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

37.    Stipulated Payments: Defendant shall make a remediation payment of One Thousand dollars ($1,000.00) for each missed deadline included in this Agreement. Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Southern California Bight and its tributaries. Defendant shall have thirty (30) days to cure any missed deadline or, in the alternative, invoke the dispute resolution procedures set forth below. Unless dispute resolution procedures have been invoked, Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline to Coast Law Group, LLP, Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024. Defendant shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VI.    **DISPUTE RESOLUTION**

38.    This Court shall retain jurisdiction over this matter to enforce this Consent Decree.

39.    Meet and Confer. A party to this Agreement shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

40.    Dispute Resolution. If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the Settling Parties may agree to enter into an Alternative Dispute Resolution process. The party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United

States District Court for the Southern District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

41.    Burden of Proof. The burden of proof for formal dispute resolution shall be in accordance with applicable law.

42.    Costs and Fees. Litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Agreement, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and 1319, and case law interpreting that standard.

43.    Force Majeure.  No Settling Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, or economic hardship.  Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

43.1.  If Defendant claims compliance was or is impossible, it shall notify Plaintiffs in writing as soon as possible, but in no event more than ten (10) business days of the date that Defendant learns of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").

43.2.  Within ten (10) business days of sending the Notice of Nonperformance, Defendant shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure. Defendant shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

43.3.  The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Agreement, despite the timely good faith efforts of Defendant, new deadlines shall be established.

43.4.  If Plaintiffs disagree with Defendant's Notice of Nonperformance, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

44.    <u>Plaintiffs' Release</u>. Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendant (and each of its direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and/or Complaint up to the termination of this Agreement.

45.    <u>Defendant's Release</u>. Upon the Effective Date of this Agreement, Defendant, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waive all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to the termination of this Agreement by the Court.

46.    Nothing in this Agreement limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendant's compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Agreement.

## VIII. **MISCELLANEOUS PROVISIONS**

47.     <u>No Admission of Liability</u>. Neither this Agreement, the implementation of additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

48.     <u>Construction</u>. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

49.     <u>Choice of Law</u>. The laws of the United States and State of California shall govern this Agreement.

50.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51.     <u>Correspondence</u>: Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff Coastkeeper:</u>

San Diego Coastkeeper
Attn: Matt O'Malley
2825 Dewey Rd, Suite 207
San Diego, CA 92106
Email: matt@sdcoastkeeper.org

<u>If to Plaintiff CERF</u>:

Coastal Environmental Rights Foundation
Attn: Sara Kent
1140 South Coast Highway 101
Encinitas, CA 92024

Email: sara@cerf.org

With Copy to:

Coast Law Group LLP
Attn: Livia Beaudin
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: livia@coastlawgroup.com

If to Superior Ready Mix:

Shawn Mendoza
Arnold Veldcamp
Superior Ready-Mix Concrete
1508 W. Mission Road,
Escondido, CA 92029
Email: smendoza@superiorrm.com
Email: aveldkamp@superiorrm.com

With Copy to:

Andrew Brady
DLA Piper LLP
550 S. Hope Street, Suite 2400
Los Angeles, CA 90071
Email: andrew.brady@dlapiper.com

52.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

53.     Effect of Consent Decree. Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to

affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

54.    <u>Counterparts</u>**.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

55.    <u>Modification of the Consent Decree</u>**.** This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by all Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

56.    <u>Full Settlement.</u> This Consent Decree constitutes a full and final settlement of this matter.

57.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

58.    <u>Authority of Counsel.</u> The undersigned representatives for Plaintiffs and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

59.    <u>Authority of Parties.</u> The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

60.    The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____7/30/19_____    By: __s/Catherine Stiefel____
                            Name:_____Catherine Stiefel__
                            Title:_President_____
                            San Diego Coastkeeper

Dated: _____7/31/19_____    By: __s/Sara Kent_____
                            Name:_____Sara Kent_____
                            Title:_Programs Director_____
                            Coastal Environmental Rights Foundation

Dated: _____7/29/19_____    By: __s/Garret J. Browner____
                            Name:_____Garret J. Browner__
                            Title:_Vice President_____
                            Superior Ready Mix Concrete L.P.

APPROVED AS TO FORM

Dated: _____7/31/19_____    By: __s/Livia Borak Beaudin___
                            Livia Borak Beaudin
                            Coast Law Group LLP
                            Attorney for CERF

Dated: _____7/30/19_____    By: __s/Matt O'Malley_____
                            Matt O'Malley
                            Attorney for San Diego Coastkeeper

Dated: _____7/29/19_____    By: __s/Andrew Brady_____
                            Andrew Brady
                            Attorney for
                            Superior Ready Mix Concrete L.P.

1 | **IT IS SO ORDERED.**

2

3

4 | Dated:  October 1, 2019

5 | Hon. Dana M. Sabraw

6 | United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28